## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### NEWARK VICINAGE

| | |
|---|---|
| SAMUEL J. PRINCE and BELINDA A. PRINCE, on behalf of themselves and all others similarly situated, | Case No.  22-1682 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | |
| v. | **DEMAND FOR JURY TRIAL** |
| TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA MOTOR NORTH AMERICA, INC., and TOYOTA MOTOR CORPORATION, | |
| Defendants. | |

## CLASS ACTION COMPLAINT AND JURY DEMAND

1.      Plaintiffs Samuel J. Prince and Belinda A. Prince ("Plaintiffs") bring this action for themselves and on behalf of all persons in the State of New Jersey ("Class Members"), who purchased or leased any model year 2020 to 2021 Toyota Highlander equipped with a hybrid powertrain ("Class Vehicles").

2.      Defendants Toyota Motor Sales, U.S.A., Inc., ("TMS") Toyota Motor North America, Inc., ("TMNA,") and Toyota Motor Corporation ("TMC") (collectively, "Toyota" or "Defendants") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced the Class Vehicles. Plaintiffs allege as follows:

## INTRODUCTION

3.      The Class Vehicles are equipped with and advertised as having 17.1 gallon fuel tanks, and able to achieve 36 miles per gallon ("MPG") for city driving, 35 MPG for highway driving, and 36 MPG for combined driving.[1] This provides a range of approximately 615 miles on a single tank of gas.

4.      Based on publicly available information, counsel's investigations, and Plaintiffs' own experiences, Plaintiffs allege that the Class Vehicles are defective in design, manufacture, materials and/or workmanship in that the fuel tank cannot be filled to its advertised capacity, compromising the promised driving range of the

---

[1] *See* https://www.toyota.com/highlanderhybrid/ (last visited March 16, 2022).

vehicles, increasing emissions and increasing the risk of overflow during fueling (the "Fuel Tank Defect" or "Defect").

5.     The Fuel Tank Defect is inherent in each Class Vehicle and present at the time of sale or lease to each Class Member, although undisclosed to, and undiscoverable by, consumers prior to purchase.

6.     Toyota designed and manufactured the fuel systems in the Class Vehicles, which are part of a hybrid power design such that the vehicle is powered by a 2.5-liter gasoline engine as well as electric motors. The Class Vehicles are Toyota's fourth-generation Highlander Hybrid expressly representing:

> The bottom line is an eye opener for the efficiency-minded: 243 total system horsepower and up to a manufacturer-estimated 36 combined MPG. The latter is a 24-percent improvement over the previous-generation Highlander Hybrid's 29 combined MPG. [2]

7.     Toyota's authorized dealerships, which are sole and exclusive sellers of Toyota's new vehicles to consumers and whose advertising statements are tightly controlled by Toyota, repeat these claims of fuel economy and ability to drive long distances. One dealership advertises as follows:[3]

---

[2] See "Toyota's Fourth Generation 2020 Highlander Redesigned from the Ground Up," Toyota NewsRoom, available at https://pressroom.toyota.com/toyotas-fourth-generation-2020-highlander-redesigned-from-the-ground-up/ (Dec. 18, 2019) (last visited March 16, 2022).

[3] https://www.toyotagallatin.com/toyota-highlander-mpg-review-gallatin-tn.html (last visited March 16, 2022).

## Travel Far and Wide with the Highlander

Thanks to a 17.9-gallon tank on the gas model, the 2021 Toyota Highlander can travel nearly **520 highway miles** on a full tank of gas. This means you can run your kids to their after-school activities or even take a weekend camping trip, all without stopping often at the pump.



Usually, in hybrid models, the gas tank is significantly smaller to accommodate the battery. However, in the Highlander hybrid, you'll be treated to a 17.1-gallon tank. When full, you can expect to journey over **615 city miles** before needing to refuel.

8.     In the fourth generation hybrid versions of the Highlander, Toyota employed its "new-generation Toyota Hybrid System," using "a high-efficiency 2.5-liter DOHC four-cylinder engine with two electric motors."[4] As described by Toyota, "[t]he transaxle mounts the electric motors (MG1 and MG2) coaxially rather than in-line."[5] This design change necessitated that Toyota redesign a number of internal components in order to accommodate the layout of the hybrid system. One of the re-designed pieces was the fuel tank assembly ("fuel tank").

9.     Since its introduction, this redesigned Highlander Hybrid has been the subject of hundreds of complaints by consumers, who have been unable to fill up their vehicles to the advertised capacity of 17.1 gallons. When refueling, consumers report that the automatic shut-off activates well before the tank is full, usually after

---

[4] *See* "World Premiere of All-New 2020 Highlander at New York International Auto Show," Toyota NewsRoom, available at https://pressroom.toyota.com/world-premiere-of-all-new-2020-highlander-at-new-york-international-auto-show/ (April 17, 2019) (last visited March 16, 2022).

[5] *Id.*

a mere 12-14 gallons have been added to an empty tank. Consumers can attempt to force the tank to accept more fuel by slowly adding gas after the automatic shut-off has been triggered, but many have reported gas then spilling out of the vehicle well before the tank has actually been filled to the advertised capacity of 17.1 gallons. Even in those situations, the gas gauge in Class Vehicles rarely reads full and the computed Distance to Empty ("DTE") is usually well below the expected 615-mile range.

10. The Fuel Tank Defect presents a safety risk for Plaintiffs, members of the Class, and the general public because, discovery will show, the fuel systems in Class Vehicles are not properly vented, leading to increased emissions from the car, damaging the fuel system components due to higher internal pressure, and increasing the risk of fuel spilling out of the vehicle while being re-fueled.

11. When some customers call or email Toyota Customer Care to complain, Toyota initially obfuscates the issue by referring to variables that can influence fuel efficiency and DTE. When pressed, however, Toyota eventually acknowledges the issue to consumers, admitting that although the Class Vehicles have "a fuel tank with a 17.1 gallon capacity," only "approximately 14.2 gallons of a it [*sic*] useable." Yet Toyota has refused to date to provide any notice to consumers, owners and lessees—including Class Members—about the Defect or when they can expect a repair for the defect. In fact, Toyota continues to advertise

the fourth generation Highlander Hybrids as having a 17.1 gallon capacity fuel tank despite knowing that consumers are unable to actually achieve that capacity.

12. Despite acknowledging the Defect internally and to authorized dealers, Toyota continues to market and sell the Class Vehicles, promising 36 miles per gallon ("MPG") for city driving, 35MPG for highway driving, and a combined 36 MPG.[6] The combined mileage range is 616 miles, as noted by the U.S. Department of Energy in Figure 2.[7]



**FIGURE 2**

---

[6] *See* https://www.toyota.com/highlanderhybrid/ (last visited March 16, 2022).

[7] *See* https://www.fueleconomy.gov/feg/Find.do?action=sbs&id=42477&id=43130 (last visited March 16, 2022).

13.    Based on pre-production testing and design failure mode analysis, early complaints to dealers and warranty claims, replacement part orders, and complaints made by consumers to Defendant TMS and NHTSA, Defendants were aware of the Fuel Tank Defect in Class Vehicles, but continued to misrepresent the fuel capacity of the Class Vehicles and their effective range on a single tank of gas, and further concealed the Defect and its effects from Plaintiffs and members of the Classes.

14.    Knowledge and information regarding the Fuel Tank Defect and the associated safety risk of increased emissions, damage to the fuel system components, and fuel spillage while re-fueling was in the exclusive and superior possession of Defendants and their authorized dealers and was not provided to Plaintiffs and members of the Classes, who could not reasonably discover the defect through due diligence. Further, Toyota has experience with a similar defect resulting from the shape of the gas tank from its pre-production testing and post-production receipt of complaints about the 2019 Toyota RAV4 Hybrid, whose 14.5 gallon tank also could not be filled to capacity. Indeed, the RAV4 fuel tank defect is the subject of several class action lawsuits consolidated and currently pending in this district, *In Re Toyota RAV4 Hybrid Fuel Tank Litigation*, No. 3:20-cv-00337, which further put Toyota on notice of the defective nature of the fuel tanks in its hybrid sport utility vehicles. In mid-2020, Toyota released a repair for the 2019 and 2020 Toyota RAV4 Hybrids – a replacement fuel tank – which it had been working on for over a year.

6

Despite Defendants' knowledge that such a Fuel Tank Defect requires a replacement fuel tank, and their knowledge that the Fuel Tank Defect exists in the fifth generation Toyota Highlander Hybrid, Toyota continues to sell these defective vehicles, has failed to disclose the existence of the Fuel Tank Defect to directly to consumers, Plaintiffs and members of the Classes, has not issued a recall and has not remedied the Defect and/or compensated Class Vehicle purchasers, owners, or lessees for this material defect. Discovery will show that that Toyota has not made any disclosure of the Fuel Tank Defect in order to not delay the release and sales of the fifth generation Toyota Highlander Hybrid because of the expense and time it would take to fix the Defect in all of the Class Vehicles.

15.    No reasonable consumer expects to purchase or lease a vehicle that contains a concealed Fuel Tank Defect which creates a safety hazard and effectively limits the fuel capacity and range of the vehicle. The Fuel Tank Defect is material to Plaintiffs and members of the Classes because when they purchased or leased their Class Vehicles, they reasonably expected that they would be able to fill their fuel tanks to the advertised capacity, especially given that Toyota has not warned that the full capacity of the fuel tank may not be available and the full range of the Class Vehicles would not be available. Had Defendants disclosed the Fuel Tank Defect, Plaintiffs and members of the Classes would not have purchased or leased their Class Vehicles, or would have paid less for their Class Vehicles.

**THE PARTIES**

<u>**Plaintiffs Samuel J. Prince and Belinda A. Prince**</u>

16.    Plaintiffs Samuel J. Prince and Belinda A. Prince are New Jersey citizens who reside in Cranford, New Jersey.

17.    In or around November 2020, Plaintiffs purchased a new 2020 Toyota Highlander Hybrid from Rudy Luther Toyota, an authorized Toyota dealer in Golden Valley, Minnesota.

18.    Plaintiffs also purchased the Toyota Extra Care Vehicle Service Agreement Platinum Coverage for $2,845.00.

19.    Plaintiffs purchased their Toyota Highlander Hybrid vehicle primarily for personal, family, or household use.

20.    The MPGs and the vehicle's range based on stated fuel capacity were primary factors in the Plaintiffs' decision to purchase their Class Vehicle. Plaintiffs understood based on Toyota's false representations that the 2020 Toyota Highlander Hybrid would provide both the promised fuel economy as well as the capacity to hold 17.1 gallons of gas to deliver a range of at least 615 DTE per tank of gas.

21.    Toyota's misstatements and omissions were material to Plaintiffs. Had Toyota disclosed its knowledge of the Fuel Tank Defect before Plaintiffs purchased their Highlander Hybrid, they would have seen and been aware of the disclosures.

Furthermore, had they known of the Fuel Tank Defect, Plaintiffs would not have purchased their vehicle or would have paid less for it.

22.   Since purchasing their Class Vehicle, Plaintiffs have raised the conditions caused by the Fuel Tank Defect several time to Autoland Toyota in Springfield, N.J.

23.   On January 13, 2022, Plaintiffs followed up with their sales person regarding the Fuel Tank Defect as set forth below:



24.   Toyota has not repaired or remediated the Fuel Tank Defect, and appears unable or unwilling to do so.   As such, Plaintiffs have continued to experience the Fuel Tank Defect, leading to refill their vehicle more often than contemplated while purchasing a hybrid vehicle with a 17.1 gallon tank and a stated range of over 600 miles on a single tank.

25.    At all times, Plaintiffs, like all Class Members, have attempted to drive their Toyota Highlander Hybrid in a manner that is and was both foreseeable, and in which it was intended to be used.

**Defendants**

26.    Defendant Toyota Motor Sales, U.S.A., Inc.("TMS"), is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of California. TMS is headquartered at 6565 Headquarters Dr, Plano, TX 75024. TMS markets motor vehicles, parts, and other products for sale in New Jersey, in the United States, and throughout the world. TMS is the warrantor and distributor of Class Vehicles in New Jersey and throughout the United States.

27.    In order to sell vehicles to the general public, TMS enters into agreements with dealerships who are then authorized to sell Toyota-branded vehicles to consumers such as Plaintiffs. In return for the exclusive right to sell new Toyota vehicles in a geographic area, authorized dealerships are also permitted to service and repair these vehicles under the warranties TMS provides directly to consumers. These contracts give TMS a significant amount of control over the actions of the dealerships, including sale and marketing of vehicles and parts for those vehicles. All service and repairs at an authorized dealership are also completed according to TMS's explicit instructions, issued through service manuals, technical service

bulletins ("TSBs"), and other documents, that were created with input from TMNA. Per the agreements between TMS and the authorized dealers, consumers such as Plaintiffs can receive services under TMS's issued warranties at dealer locations that are convenient to them. TMS has a nationwide dealership network and operates offices and facilities throughout the United States.

28.   Defendant Toyota Motor North America, Inc. ("TMNA"), is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of California. TMNA is headquartered at 6565 Headquarters Dr, Plano, TX 75024. According to Toyota's official website, TMNA "brings together Toyota's marketing, sales, engineering and manufacturing arms in North America on one shared, state-of-the-art campus."[8]

29.   TMNA also maintains offices in Torrance. Additionally, TMNA's research and development offices are located in Gardena, California, where they are "engaged in engineering design, vehicle evaluation, powertrain development & calibration, regulatory affairs, and alternative powertrain research for Toyota and Lexus vehicles manufactured or sold in North America."[9][15] The Gardena offices are also known as "Toyota Technical Center." ("TTC").

_____

[8]   https://www.toyota.com/usa/operations/index.html#!/Operations-Map (last visited March 16, 2022)

[9]   https://www.toyota.com/usa/operations/map.html#!/ttc_gardena (last visited March 16, 2022)

30.     TMS and TMNA also develop and disseminate the owners' manuals, warranty booklets, maintenance schedules, advertising such as vehicle brochures, and other promotional materials relating to the Class Vehicles through the dealership network. TMS is also responsible for the production and content of the information on the Monroney Stickers.

31.     Founded in 1937 and headquartered in Toyota City, Japan, Defendant Toyota Motor Corporation ("TMC") is a corporation organized under the laws of Japan. TMC manufacturers and distributes automobiles, as well as parts for Toyota branded vehicles, and is the parent company of both TMS and TMNA. Discovery will show that TMC is responsible for the design of the Class Vehicles, and also manufactures the Class Vehicles, their fuel systems, and the fuel system's components, in Japan and in the United States through TMNA.

32.     Defendants, through their various entities, design, manufacture, market, distribute, service, repair, sell, and lease passenger vehicles, including the Class Vehicles, nationwide and in California.

33.     At all relevant times, Defendants were and are engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in Riverside County and throughout the United States of America.

## JURISDICTION AND VENUE

34.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 and jurisdiction over the Magnuson Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

35.     Venue properly lies in this District and vicinage pursuant to 28 U.S.C. § 1391(a), (b) and (c) because Plaintiff resides in this District.

## FACTUAL ALLEGATIONS

36.     Toyota has thousands of authorized dealerships across the United States and controls the distribution of automobiles, parts, services, and warranty repairs throughout the United States, all of which are under Toyota's control. Toyota authorizes these distributors and dealerships to sell Toyota vehicles, parts, and accessories and to service and repair Toyota vehicles using Toyota parts. Toyota sells its vehicles to its authorized distributors and dealerships, which in turn sell those vehicles to consumers. After these dealerships sells cars to consumers,

13

including the Plaintiffs and Class members, they purchase additional inventory from Toyota to replace the vehicles sold, increasing Toyota's revenues. Thus, Plaintiffs' and Class Members' purchase of Class Vehicles accrues to the benefit of Toyota by increasing its revenues.

37.    Since approximately 2015, Toyota has been developing the fourth generation Highlander and Highlander hybrid. Toyota designed, manufactured, distributed, sold, and leased the Class Vehicles. Toyota has sold, directly or indirectly, through dealers and other retail outlets, thousands of Class Vehicles. Toyota warrants and services the Class Vehicles through its nationwide network of authorized dealers and service providers.

38.    While the Class Vehicles are hybrids, they also have an internal combustion engine fueled by gasoline. A functional fuel system requires proper venting, both to allow the accumulating gas vapors in the fuel tank to release safely and to allow air to escape so that fuel can take it place when being filled at a gas station.

39.    When a fuel system cannot properly vent air and gas vapors during the refueling process, the air the system should expel from the tank instead goes up the filler neck. This activates the mechanical pressure switch on the fuel pump, which informs the pump that the car is full and shuts off the flow of fuel. If the fuel tank

14

cannot properly vent, the fuel efficiency of the vehicle can also suffer, emissions from the vehicle can increase, and the system itself can sustain damage.

40. Discovery will show that the Class Vehicles are equipped with fuel systems which do not properly vent the air and gas vapors from the fuel tanks, increasing emissions, reducing efficiency, and making it impossible to use the full capacity of fuel tank. This contrasts with the 2020 and 2021 Toyota Highlander non-hybrid models, and even the third generation Toyota Highlander Hybrids, both of which use a differently configured fuel system and different component parts.

41. The Class Vehicles are equipped with a 17.1 gallon, latitudinal fuel tank whose Toyota part number is 77001-0E160 which is labeled "1" Figure 3. In contrast, the gasoline-only fourth generation Toyota Highlanders use a 17.9 gallon tank, Toyota part number 77001-0E160, which is positioned longitudinally in the vehicle.



**FIGURE 3**

15

42.     This setup differs also significantly from the set-up of the previous generation Toyota Highlander Hybrid, as shown in Figure 4, whose 17.2 gallon tank has a different shape than the one in Class Vehicles.



**FIGURE 4**

43.     Additionally, the fuel pick-up line, which draws fuel from the fuel tank, is designed so that the intake is not at the bottom of the fuel tank. The positioning is intentional, so that residual fuel does not get into the engine as residual fuel can possibly be contaminated with debris, water, or other materials. This design decision, which was made before the first sale of the Class Vehicle, renders a percentage of fuel in the tank inaccessible and not useable.

44.     Due to the Fuel Tank Defect and the insufficient venting of air and gas vapors, combined with the positioning of the fuel pick-up line, the Class Vehicles'

16

fuel tanks are unable to be filled to their full capacity. Discovery will show that the lack of proper venting causes unsafe emissions from Class Vehicles, damages the components of the fuel system such that they will have to be replaced sooner than anticipated, and creates a dangerous risk of overflow when consumers are filling their vehicles at gas stations.

45.     Despite this, Toyota advertises the Class Vehicles as having both a fuel tank with a 17.1 gallon capacity and a DTE of over 600 miles in the vehicle brochures, specification sheets, owners' manuals, and warranty booklets, and on the website maintained by TMS, which is incorporated by reference on the Moroney Stickers affixed to the vehicles by TMC. Further, the Moroney stickers reference that the vehicles are sold with a "full tank of gasoline," although as seen by the experience of Plaintiffs, particularly Plaintiff Hutcherson, that is not true. None of these sources of information available to Plaintiffs and members of the Class prior to purchase references the Defect, or the fact that the fuel tanks in the Class Vehicles cannot be filled to capacity and that DTE of over 600 miles is impossible.

46.     Class Member complaints to NHTSA, cited *infra*, as well as the hundreds of complaints Toyota has received directly from consumers, and the complaints Toyota has received via its authorized dealerships, demonstrate the unsafe and widespread nature of the Fuel Tank Defect and Defendants' awareness that the Defect existed before selling the Class Vehicles to Plaintiffs.

**Toyota Had Superior and Exclusive Knowledge of the Fuel Tank Defect**

47.     Toyota had superior and exclusive knowledge of the Fuel Tank Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the Class Vehicles.

48.     Plaintiffs are informed and believe and based thereon allege that before Plaintiffs purchased or leased their respective Class Vehicles, and since pre-production road testing of the 2020 Toyota Highlander beginning in late 2018, if not earlier, Toyota knew about the Fuel Tank Defect through sources not available to consumers, including pre-release testing data, such as design mode failure analysis, early consumer complaints to Toyota and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, and other aggregate data from Toyota dealers about the problem. Publicly available facts set forth *infra* further confirm Toyota's knowledge.

49.     Toyota is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Toyota conducts tests, including pre-sale durability testing, on vehicle components such as the fuels systems in Class Vehicles, to verify the parts are free from defect and align with Toyota's specifications. Further, pre-production testing on vehicles and their components is designed to be harsher than expected "real-world" driving experience of consumers.

18

Such testing necessarily includes the filling and refilling of the vehicles' fuel tanks. Thus, Toyota knew or would known from these tests that the fuel systems in Class Vehicles were defective and led to the inability of the fuel tank to be filled to capacity.

50.    Additionally, Toyota should have learned and did learn of this widespread Defect from the sheer number of reports received from dealerships and from customer complaints directly to Toyota. Toyota's customer relations department collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

51.    Indeed, as of May 2020, many Class Members had already reported the Fuel Tank Defect directly to Toyota at via Toyota's Customer Care line, Toyota's owners' forum at www.toyota.com, and to various Toyota authorized dealerships.

52.    Moreover, Toyota is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Toyota conducts tests, including pre-sale durability, reliability, and safety testing, to verify the Class Vehicles and their components are free from defects and align with Toyota's specifications. Toyota also uses pre-production testing to evaluate assembly methods and manufacturing workflows, in addition to evaluating the final product –

19

the car. Thus, Toyota knew or should have known of the Fuel Tank Defect and its inherent risk to the vehicle's safety.

53. Toyota's pre-production vehicle testing is particularly robust, as demonstrated by a timeline of vehicle testing and evaluation published on TMC's website, www.toyota-global.com, is conducted in concert with TNMA. Testing includes test driving the vehicle on the four test tracks at the Tahara Plant, TMC's main manufacturing facility in Japan, at the Shibetsu Proving Ground in Hokkaido, Japan, or at the Toyota Arizona Proving Ground in Wittman, Arizona. The Proving Ground facilities enable Toyota to conduct continuous driving tests at 250 kilometer/hour in both extreme temperatures. Testing at these facilities obviously necessitates filling the gas tank of the test vehicle with gasoline multiple times, and as such, Toyota would have become aware of the Fuel Tank Defect.

54. Toyota has previously seen a similar Fuel Tank Defect in fifth generation Toyota RAV4 Hybrids, in which the shape of the fuel tank subassembly made it impossible for consumers to use the full capacity of the 14.5 gallon tank. But where Toyota rolled out a replacement fuel tank for the 2019 or later Toyota RAV4 Hybrids in 2020, it has failed to provide a repair for the similar defect in the Class Vehicles.

55. Toyota's warranty department analyzes and collects data submitted by its dealerships in order to identify trends in its vehicles. It is Toyota's policy that

when a repair is made under warranty, the dealership must provide Toyota with detailed documentation of the problem and the repair employed to correct it in order to be reimbursed. Dealerships have an incentive to provide detailed information to Toyota, because they will not be reimbursed for any repairs unless the justification is sufficiently detailed. As such, any dealer investigation of a consumer's complaint that they could not fill up the tank complete would sent to TMS, as the dealer seeks reimbursement under the bumper-to-bumper warranty for any time its technician would have spent trying to identify a problem.

56.     However, as demonstrated by the experience of Plaintiffs, by September 2020, Toyota had directed its dealerships that they do not perform diagnostic testing of the Class Vehicles in response to fuel tank capacity complaints because it was well-aware of the problem and would not compensate dealerships for any time taken to inspect the vehicle in relation to this problem. Discovery will show that instead of issuing a TSB, because no fix was available, TMS and TMNA issued a directive to the dealerships via its email or newsletter system, neither of which it is required to file with NHTSA and thus remains hidden from consumers.

57.     Toyota and its authorized dealers have informed customers that no repair exists or that their vehicle is operating as designed.   Toyota has not remediated, repaired or refunded Plaintiffs or Class Members, and therefore, has not provided any relief for the Class Vehicles.

58.     In addition, Toyota monitors customers' complaints made to NHTSA. Federal law requires automakers like Toyota to be in close contact with NHTSA regarding potential automobile defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See TREAD Act,* Pub. L. No. 106-414, 114 Stat.1800 (2000).

59.     Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* Thus, Toyota knew or should have known of the many complaints about the Fuel Tank Defect logged by the NHTSA Office of Defect Investigation (ODI), and the content, consistency, and large number of those complaints alerted, or should have alerted, Toyota to the Fuel Tank Defect.

60.     Complaints filed by consumers with the NHTSA and other websites, which Toyota actively monitored during the relevant period, continue to accrue and demonstrate that the Fuel Tank Defect is a widespread, dangerous, and unresolved problem. The following are examples of many complaints from owners and lessees

of the Class Vehicles concerning the Fuel Tank Defect available through NHTSA's

website, www.safercar.gov. Spelling and grammar mistakes appear as in original.

61.   For example, complaints to NHTSA involving the 2020 Highlander

Hybrid include:

a.  **DATE COMPLAINT FILED:** April 24, 2020
    **NHTSA/ODI ID:** 11394879
    **DATE OF INCIDENT:** February 5, 2021
    **VIN:** 5TDEBRCH3LS****
    **SUMMARY:** 2020 TOYOTA HIGHLANDER HYBRID AWD.
    WHEN FILLING FROM ALMOST EMPTY (PER LOW FUEL
    WARNING LIGHT AND DISTANCE TO EMPTY READING
    ALMOST 0), TANK ONLY ACCEPTS ~12.5 GALLONS
    BEFORE GAS STATION FUEL NOZZLE AUTO CLICKS OFF.
    THE FUEL GAGE AT THIS POINT INDICATES THAT THE
    VEHICLE IS ~7/8 FILLED. THE OWNERS MANUAL WARNS
    ABOUT NOT ATTEMPTING TO FILL AFTER THE FUEL
    NOZZLE AUTOMATICALLY CLICKS OFF. BEING UNABLE
    TO FILL TANK MAY LEAD TO OWNERS ATTEMPTING TO
    OVERFILL    TANKS    AND    COULD    RESULT    IN
    INADVERTENTLY SPILLING

    FUEL   WHICH   POSES   A   SAFETY   RISK   AND   AN
    ENVIRONMENTAL DAMAGE RISK. IT CAN ALSO LEAD TO
    MORE EMISSIONS. A SIMILAR PROBLEM EXISTS WITH
    2019/2020 TOYOTA RAV4 PER NHTSA RECORDS, TOYOTA
    HAS PROPOSED A FIX FOR THIS VEHICLE BUT HAS
    STATED THAT NO OTHER MODELS ARE AFFECTED BY
    THIS ISSUE. THE PROBLEM DESCRIBED ABOVE IS
    ALMOST IDENTICAL WITH THE EXCEPTION THAT THE
    VEHICLES HAVE DIFFERENT FUEL TANK CAPACITIES.
    TOYOTA HAS INDICATED THAT THIS IS "NORMAL".

b.  **DATE OF INCIDENT:** March 3, 2021
    **DATE COMPLAINT FILED:** March 7, 2021
    **NHTSA/ODI ID:** 11399660
    **VIN:** 5TDGBRCH7LS****

**SUMMARY:** THE VEHICLE IS SOLD AS HAVING A 17 GALLON FUEL TANK. I'VE DRIVEN THE VEHICLE FOR 5000 PLUS MILES NOW. I HAVE NEVER BEEN ABLE TO GET MORE THAN 13 GALLONS OF FUEL INTO THE TANK. I HAVE WAITED UNTIL THE GAGE SAID THERE WAS ONLY 12 MILE UNTIL EMPTY. STILL COULD ONLY FILL UP WITH ON 13 GALLONS OF FUEL. THE GAGE SAY'S IT'S FULL. I HAVE MADE THE TOYOTA DEALERSHIP AWARE OF THE ISSUE. BUT THEY SAID THERE WAS NOTHING ON THEIR SYSTEM ABOUT A RECALL OR NEEDED REPAIR. IF THE VEHICLE IS ADVERTISED AS HAVING A 17 GALLON TANK I SHOULD BE ABLE TO USE THAT WHALE 17 GALLONS OF FUEL. INSTEAD I CAN ONLY FILL UP TO 13 GALLONS.

c. **DATE OF INCIDENT:** February 28, 2021
**DATE COMPLAINT FILED:** March 31, 2021
**NHTSA/ODI ID:** 11405736
**VIN:** 5TDHBRCH6LS****
**SUMMARY:** EACH TIME I FILL UP THE CAR WITH GAS I AM UNABLE TO FILL THE TANK TO ITS LISTED CAPACITY. THE VEHICLE HAS A 17 GALLON TANK, BUT WHEN THE VEHICLE IS NEAR EMPTY (1-2 GALLONS REMAINING) I CAN PUMP IN ONLY 12-13 GALLONS OF GAS. THIS GREATLY IMPACTS THE RANGE OF THE VEHICLE. THE DATE SHOWN BELOW IS MOST RECENT FILL-UP, IT HAS HAPPENED EACH TIME I FILL UP. I HAVE REPORTED THIS TO MY TOYOTA DEALER.

d. **DATE COMPLAINT FILED:** January 21, 2021
**NHTSA/ODI ID:** 11389244
**DATE OF INCIDENT:** March 28, 2020
**VIN:** 5TDXBRCH9LS****
**SUMMARY:** FUEL GAUGE DOES NOT PROPERLY REGISTER FULL HYBRID FUEL TANK (DESIGN) AND/OR DEFECTIVE FUEL LEVEL SENDING UNIT. TOYOTA SERVICE REPORT (6032680/1- 25 SEP 2020); TOYOTA SERVICE REPORT (6046594/1- 21 JAN 2021).

e. **DATE COMPLAINT FILED:** January 19, 2021
**NHTSA/ODI ID:** 11388861

**DATE OF INCIDENT:** August 1, 2020
**VIN:** 5TDEBRCH6LS\*\*\*\*
**SUMMARY:** 2020 TOYOTA HIGHLANDER HYBRID PLATINUM AWD CANNOT FILL UP FUEL TANK ALL THE WAY. MAX CAN FILL IT UP WHEN IT SHOWS 0 MILES LEFT OF FUEL IS LESS THAN 13 GALLON AND CAR HAS OVER 17 GALLONS. TOYOTA IS SAYING THEY DON'T KNOW WHAT THE ISSUE IS. NO SOLUTION AT THIS TIME FOR A $50K CAR

f. **DATE COMPLAINT FILED:** December 7, 2020
   **NHTSA/ODI ID:** 11378393
   **DATE OF INCIDENT:** August 3, 2020
   **VIN:** 5TDHBRCH7LS\*\*\*\*
   **SUMMARY:** THE GAS TANKS HOLDS 17 GALLONS OR ~570 MILES TO EMPTY. THE MOST I CAN FILL IT IS ~14 GALLONS OR ~470 MILES TO EMPTY. IT ALWAYS CLICKS OFF LIKE IT'S FULL. I'VE TRIED GENTLY TOPPING OFF, SLIGHTLY PULLING OUT FUEL MODEL ETC. NOTHING HAS WORKED. THIS HAS HAPPENED SINCE THE VEHICLE WAS NEW AND DRIVEN OFF THE LOT. THIS IS ALL WHILE THE VEHICLE IS PARKED AT A GAS PUMP.

g. **DATE COMPLAINT FILED:** October 15, 2020
   **NHTSA/ODI ID:** 11364594
   **DATE OF INCIDENT:** October 15, 2020
   **VIN:** 5TDBBRCH3LS\*\*\*\*
   **SUMMARY:** I PURCHASED A 2020 TOYOTA HIGHLANDER HYBRID AWD IN MAY 2020. IN JUNE 2020, I NOTICED A DISCREPANCY BETWEEN THE GAS GAUGE ABS THE DISTANCE TO EMPTY INDICATOR. THE GAS GAUGE SAID THERE WAS 3/4 OF A TANK LEFT BUT THE DTE SAID I HAD ONLY 43 MILES. I WENT TO THE GAS STATION TODAY (OCTOBER 2020) TO FILL UP MY VEHICLE AND FILLED IT UNTIL THE GAS SHUT-OFF TRIPPED. I TURNED ON MY CAR AND NOTICED THAT MY GAS GAUGE SAID IT WAS ONLY 7/8TH FULL. THINKING IT TRIPPED TOO SOON I REFILLED IT AGAIN BUT ONLY 0.5 GALLONS WENT INTO TANK BEFORE THE SHUT-OFF TRIPPED AGAIN. WHEN I TURNED ON THE CAR THIS TIME

25

THE GAS GAUGE INDICATED IT WAS FULL. I DOUBT THE
GAS GAUGE IS FUNCTIONING PROPERLY.

h.  **DATE COMPLAINT FILED:** May 6, 2020
    **NHTSA/ODI ID:** 11323593
    **DATE OF INCIDENT:** May 3, 2020
    **VIN:** 5TDGBRCH6LS****
    **SUMMARY:** MY NEW 2020 HIGHLANDER HYBRID HAS A
    BIG ISSUE WITH THE GAS TANK. I GET ONLY 460 MILES,
    EVEN IF I TOP IT OFF WITH THE GAS SPEWING OUT.
    TOYOTA ADVERTISED A 600 MILE RANGE TO THE
    HIGHLANDER HYBRID. THE 600 MILE FUEL RANGE SEEMS
    VERY OFF WITH THE 2020 HIGHLANDER HYBRID. I HAVE
    THE XLE AND ALWAYS HAVE KEPT IT IN ECO MODE. I'VE
    DRIVEN OVER A THOUSAND MILES ON THE CAR, BUT THE
    MILE RANGE ESTIMATE ON THE CAR IS INACCURATE AND
    SEEMS TO BE OFF A LOT IF IT'S SUPPOSED TO GET 600
    MILES TO A TANK. MORE IMPORTANTLY, WHEN THE
    TANK IS EMPTY (THE DASH SAYS I HAD 5 MILES LEFT TO
    EMPTY), THE GAS TANK ONLY HOLDS AROUND 13
    GALLONS EVEN THOUGH THE FUEL TANK CAPACITY IS
    SUPPOSEDLY 17.1 GALLONS. THOSE 4 GALLONS MAKE
    FOR 140 MILES LESS DISTANCE ON A TANK. IF I WAIT AND
    KEEP ON FORCING THE GAS IN SLOWLY, I CAN GET 15
    GALLONS BUT I DON'T LIKE THE IDEA OF HAVING TO
    KEEP ON PUSHING THE GAS NOZZLE UNTIL THE GAS
    SPEWS OUT OF THE TANK JUST TO GET 15 GALLONS IN. I
    KNOW TOYOTA HAS BEEN HAVING GAS TANK ISSUES IN
    OTHER MODELS RECENTLY. ONE OF THE MAIN REASONS
    I BOUGHT THE CAR WAS FOR THE FUEL TANK CAPACITY
    AND RANGE. A VIDEO EXPLANATION OF THE
    PROBLEM IS BELOW:
    HTTPS://WWW.YOUTUBE.COM/WATCH?V=HUU649ZR
    L-G&T=245S. *TR

i.  **DATE COMPLAINT FILED:** April 24, 2020
    **NHTSA/ODI ID:** 11322170
    **DATE OF INCIDENT:** April 22, 2020
    **VIN:** 5TDHBRCH8LS****

**SUMMARY:** TOYOTA ADVERTISES AND REPRESENTS THAT THE HIGHLANDER HYBRID′S FUEL TANK CAPACITY IS 17.1 GALLONS, AND BASED ON ITS 35 MPG RATING, THE RANGE SHOULD BE ABOUT 600 MILES. HOWEVER, I AM NOT ABLE TO FILL THE TANK BY MORE THAN 12 GALLONS THUS REDUCING MY RANGE TO 420 MILES. I BELIEVE THERE IS A DEFECT IN THE NEWLY DESIGNED SADDLE TANK WHICH PROHIBITS THE TANK FROM BEING FILLED COMPLETELY THUS CHEATING ME OUT OF ABOUT 180 MILES OF DRIVING RANGE.

62.    For example, complaints to NHTSA involving the 2021 Highlander

Hybrid include:

a.  **DATE COMPLAINT FILED:** April 28, 2021
**NHTSA/ODI ID:** 11414311
**DATE OF INCIDENT:** April 21, 2021
**VIN:** 5TDEVRCH5MS****
**SUMMARY:** I REPORTED MY GAS TANK NOT FILLING PAST 12.9 GALLONS OF GASOLINE ON NUMEROUS FILL UPS ON MY NEW 2021 HIGHLANDER HYBRID PLATINUM TO TOYOTA SERVICE DEPARTMENT. THE HIGHLANDER ON INVOICE SAYS IT'S A 17 GALLON TANK CAPACITY. TOYOTA SERVICE DEPART REFILLED MY EMPTY TANK TO12.6 GALLONS VERIFYING MY COMPLAINT. THE SERVICE ADVISOR INFORMED ME THEY NOTIFIED TOYOTA AND TOYOTA RESPONDED IN SAYING THEY ARE AWARE OF THE ISSUE AND THERE'S NOTHING TODO. THE TOYOTA SERVICE ADVISOR INFORM ME UNTIL THERE IS ENOUGH COMPLAINTS THEN TOYOTA WOULD ISSUE A RECALL

b.  **DATE COMPLAINT FILED:** April 4, 2021
**NHTSA/ODI ID:** 11406311
**DATE OF INCIDENT:** March 16, 2021
**VIN:** 5TDDBRCH8MS****
**SUMMARY:** THIS IS NOT A SAFETY ISSUE PER SE BUT ONE OF FALSE ADVERTISING. TOYOTA ADVERTISES THE RANGE OF MY HYBRID HIGHLANDER AS 600 MILES ON

27

17.1 GAL TANK AT 35 MPG. I DO GET 35 MPG (WHICH IS QUITE COMMENDABLE FOR A VEHICLE THIS SIZE) BUT I CANNOT FILL THE FUEL TANK MORE THAN 12-13 GAL EVEN WHEN NEARLY BONE-DRY EMPTY. IN TURN I CANNOT DRIVE ANY FURTHER THAN 450 MILES WITHOUT FILLING UP. SOMETHING IS WRONG WITH EITHER THE DESIGN OF FUEL TANK SUCH THAT NOT ALL THE FUEL CAN BE ACCESSED OR THE DESIGN OF THE FUEL FILLER HOSE SUCH THAT ONE CANNOT FILL THE TANK COMPLETELY. ANOTHER OPTION IS PERHAPS THE FUEL TANK IS NOT TRULY 17.1 GALLONS AS DOCUMENTED. TOYOTA SHOULD NOT ADVERTISE A RANGE OF 600 MILES WHEN THIS IS NOT REALISTIC EVEN WHEN ACHIEVING 35 MPG.

c. **DATE COMPLAINT FILED:** March 31, 2021
**NHTSA/ODI ID:** 11405764
**DATE OF INCIDENT:** March 31, 2021
**VIN:** 5TDEBRCH5MS****
**SUMMARY:** THE 2021 HIGHLANDER HYBRID IS NOT TAKING MORE THAN 10-11GALLONS PER FILL UP AND THE DISTANCE TO EMPTY INDICATOR ONLY STATES APPROX. 420MILES NOT THE 590-615MILES BASED ON THE STATED 34/35 MPG PER TOYOTA ON THE HYBRID MODEL. WE HAVE FILLED THE VEHICLE SEVERAL TIMES AND AT MULTIPLE GAS STATIONS AND EACH TIME THE TANK WILL NOT

d. **DATE COMPLAINT FILED:** March 29, 2021
**NHTSA/ODI ID:** 11405453
**DATE OF INCIDENT:** March 29, 2021
**VIN:** 5TDZARAHXMS****
**SUMMARY:** THE 2021 TOYOTA HIGHLANDER HYBRID GAS TANK IS EXACTLY 17.1 US GALLONS IN SIZE BUT EVEN WHEN THE LOW FUEL INDICATOR LIGHT TURN ON AND THE THE FUEL GAUGE IS AT NEAR EMPTY IT WILL ONLY ACCEPT A MAXIMUM OF 12.9 TO 13.8 GALLONS. TOYOTA STATES THAT THE MAXIMUM RANGE ON A FULL TANK OF THE VEHICLE IS 615 MILES BUT WHEN FULL THE MAX-RANGE ALWAYS FALLS BETWEEN 460 TO

490 MILES GIVEN MY MPG OF 34.5 TO 36.5. THERE IS AN ISSUES WITH THE FUELING SYSTEM THAT DOES NOT ALLOW THE VEHICLE TO BE PROPERLY FUELED OR THE SYSTEM IS DEFECTIVE. OTHER DRIVERS HAVE BEEN HAVING THE SAME ISSUES TRYING TO FILL THEIR GAS TANKS TO THE INDICATED AMOUNT AFTER THE FUEL INDICATOR COME ON AND HAVING LOW RAGE LEFT OF ABOUT 25 MILES. THIS IS AN ISSUES THAT HAPPENS AT VARIOUS GAS STATIONS SO THE ISSUE IS NOT THE PUMP BUT THE VEHICLE.

e. **DATE COMPLAINT FILED:** January 25, 2021
**NHTSA/ODI ID:** 11389811
**DATE OF INCIDENT:** January 25, 2021
**VIN:** 5TDEBRCH7MS****
**SUMMARY:** MY 2021 HIGHLANDER HYBRID PLATINUM IS EXPERIENCING A FUEL FILLING ISSUE. OVER THE FIRST 2,000 MILES, THE VEHICLE WILL NOT TAKE MORE THAN 13.5 GALLONS AT FILL UP ' NO TOPPING OFF. THE CAR HAS A 17.1 GALLON TANK. THE CAR HAS GONE AS LOW AS 2 MILES TO EMPTY ACCORDING TO THE CAR ESTIMATE. AT EACH FILL UP IT TAKES BETWEEN 12.5 AND 13.5 GALLONS. IT IS NOT CLEAR IF THE TANK IS FILLING UP COMPLETELY AND THERE ARE 4-5 GALLONS LEFT AT 'EMPTY' OR THE TANK IS NOT ABLE TO FILL COMPLETELY. I PURCHASED THIS CAR FOR IT'S FUEL ECONOMY AND RANGE WHILE TRAVELING WITH MY FAMILY. IT IS IMPORTANT TO KNOW IF THE TANK IS ACTUALLY EMPTY OR STILL HAS SUBSTANTIAL AMOUNT OF FUEL REMAINING SO MY FAMILY IS NOT STRANDED OUT OF FUEL.

f. **DATE COMPLAINT FILED:** December 30, 2020
**NHTSA/ODI ID:** 11385688
**DATE OF INCIDENT:** December 30, 2020
**VIN:** 5DTGBRCH6MS****
**SUMMARY:** 2 ISSUES- THE DISTANCE TO EMPTY ONLY READS 425 MILES. WITH A FULL 17 GALLON TANK IT SHOULD BE AROUND 600. WHEN YOU FILL IT, IT CLICKS OFF 3-4 GALLONS SHORT OF FULL, ONLY HOLDING

29

> ABOUT 14 GALLONS. THE FUEL GAUGE SHOWS FULL. I
> THEN HAD TO TRICKLE IN THE REMAINING 3.5 GALLONS.
> HOW COULD IT SHOW FULL WITH 3.5 MORE GALLONS
> GOING IN? WHY IS THE TANK NOT ABLE TO TAKE THE
> FULL AMMOUNT OF FUEL?

63.     Highlander owners also reported the Fuel Tank Defect in online forums:

    a.     On [ToyotaNation.com](https://www.toyotanation.com/threads/2020-hybrid-fuel-tank-issue.1677254/), on a thread titled "2020 Hybrid Fuel Tank Issue" a consumer posted the following on April 24, 2020:[10]

> Have any other 2020 Highlander Hybrid (AWD) owners
> having issues with filling the fuel tank all the way or the
> DTE display showing much less than it should?
>
> When I took delivery of my 2020 Highlander Hybrid last
> month I was concerned that the "Distance to Empty"
> display read only 420 miles. I asked the salesman if this
> was right and she confirmed that the fuel capacity of the
> vehicle was 17.1 gallons and the MPG is rated at 35 so the
> range should be about 600 miles. Then she said that it
> might take a while for the computer to reset and show the
> correct DTE.
>
> I've only driven the vehicle 725 miles since I got it due to
> Covid-19 restrictions, and while it's averaging 35.6 miles
> per gallon (mostly ECO mode), the vehicle only shows
> about 420 miles DTE when refueled. This week I
> specifically waited for the low fuel light to go on and drove
> a few miles past just for good measure. I went to the gas
> station and only could pump 12 gallons before the pump
> shut off. I tried topping off the tank and eeked 12.5 gallons
> into the tank and showed DTE of 445 miles – far less than
> the 609 miles I expected.

---

[10] https://www.toyotanation.com/threads/2020-hybrid-fuel-tank-issue.1677254/ (last visited March 16, 2022).

I took the vehicle back to the dealership and explained the problem. They checked for error codes, software updates, recalls and TSBs and found nothing. They noted that that were no issues. I called Toyota corporate and was told the same thing - no issues reported.

I did some research ("Google") and found that 2019/2020 RAV4 Hybrids with the same new "saddle" tank design are having the same problem I'm experiencing. Apparently, the new tank design is required to accommodate the hybrid drivetrain and won't fill all the way. RAV4 owners can fill about 9 to 10 gallons of the 14.5 gallon tank – pretty consistent with what I'm getting with 12 gallons of the 17 gallon tank capacity.

I'm pretty sure there's a design defect in the Highlander Hybrid fuel tank preventing the last five gallons of gas being pumped thus cheating me out of 180 miles of range.

While Toyota has acknowledged an issue with the RAV4 and are working on a fix, they haven't acknowledged a problem with the Highlander yet. I guess I might have to join the RAV4 class action lawsuit in order to get satisfaction?

b.      On May 2, 2020, a user named Hylanderhybrid fan responded

to the above post:[11][17]

Yep,  Having issues. I just traded in a RAV4 Hybrid Limited for a 2020 XLE AWD Hybrid Highlander. Although I did have gas filling issues with RAV4 reason for trading in was size ( for increase in family). Today went to fill up with tank Until Empty at 77 miles and tank clicked off at 9.2 gallons. I had that same feeling like RAV4. Was able to put in additional 4 gallons to 13 until gas started gushing out. Until Empty until 440 miles ???? Here we go

---

[11] https://www.toyotanation.com/threads/2020-hybrid-fuel-tank-issue.1677254/post-14235428

again. I love the highlander by the way. Drives much smoother than RAV4.

c.    On ToyotaNation.com, on a thread titled "2021 Toyota Highlander Hybrid Tank issue" a consumer posted the following on April 17, 2021:[12]

Hello,

I had tried to fill my tank from low fuel warning (~2.6 gal) to top off is around 12-12.5 gal with multiple gas stations. Toyota spec said the tank capacity is 17.1 gal which is couple gallons off for my car. I am not sure whether the gauge has issue or tank shape is problematic that prevented to get 17.1 gal. I submitted ticket to NHTSA for this issue and saw many people posted the same issue. I called Toyota today to create a case for this issue but customer service claimed there is no report for this issue. It is similar to RAV4 Hybrid issue.

Does anybody know how to fix this issue? Is there anything else that I need to do to fix it?

If you have the same issue for 2021 Model Highlander Hybrid, then please help to file the case with Toyota and NHTSA and hope they will do something about it. Thanks.

d.    On April 17, 2021, a user named JBandit03 responded to the above post:

Yes, and I'm annoyed that Toyota wants you to call to complain about an issue vs being able to submit an email as before. But, if you check out the hybrid forum, there's a stickied post at the top about it.

---

[12] https://www.toyotanation.com/threads/2021-toyota-highlander-hybrid-tank-issue.1697464/ (last visited March 16, 2022).

e.      On Edmunds.com, a consumer posted the following on May 9,

2020:[13]

> **** New Vehicle Review**. Will post further reviews with miles but have to say I'm very happy so far. I traded in my Rav-4 Hybrid Limited-2019 since our family grew

> and we needed extra space for the inlaws      (tip#1: never trade in to a dealer but everyone knows that). Purchased an XLE and wow. The ride and drive is in my opinion is much more than the Rav-4. It glides. Also the vehicle is "solid" and much more sturdier than the Rav-4. Seats are more comfortable as well. Yes the third row seat bench is small but the Captain Chairs on second row move forward. It will work well. I'll post further updates on mileage.

> ** One concern though is when I fill the gas tank it shut off at 11 gallons but has 17.1. I had nurse about 3 gallons. As you've read, Rav 4 Hybrid's had this gas tank issue so will      keep      an      eye      on this*************************************UPDATED      JUNE      30      2020/      2500      MILE REVIEW***************Posted a previous Review when we first purchased the vehicle. Again, I traded in our Rav4 Hybrid for increase in size. Overall so far has mostly positives with few negatives but I will say we are only at 31.2 mpg overall with the Odometer so no where close to the advertised 35/36 MPG for the Hybrid. Positives:

> -Ride and comfort. Rides much smoother than the Rav4 Hybrid and seats are also more comfortable .

> -More room. Yes the 3rd row is not for long road trips and really made for smaller adults (5'4) and kids but it's extra room if you need it and works for our kids If you are

---

[13]  https://www.edmunds.com/toyota/highlander-hybrid/2020/consumer-reviews/ (last visited March 16, 2022).

tall it would be a challenge to sit there for any length of time.

Negatives:

-Not getting the MPG I was anticipating. 31.3 overall I've also noticed compared to my Rav 4 Hybrid that the EV mode does not flip on as much? So disappointed on that end. I'm not sure if Toyota plans on a Plug In Highlander....that would be great!

So overall happy with our choice. I'm thinking I should have waited to see if a Plug In Highlander is in the works but would be a while yet. Nice, comfortably and safe ride. Will keep you updated with the miles.

******** UPDATED 5,000 MILE REVIEW SEPTEMBER 24,2020****

Just updating review. I really enjoy this vehicle to date. MPG still 32-33.... mixed driving with best at 34 so close to Rated MPG. Very comfortable ride and still happy on purchase. Wish list would be plug in vs all EV Highlander!!

If families would recommend bench seat on second row for kids      !

    f.    For instance, on kbb.com, a consumer posted the following on

April 2, 2021:[14]

The Pros: Nice car, rides great, very smooth. I have the XLE which has a lot of nice regular &#38; safety features. The front seat is very comfortable, and with great adjustments. The car is overall a decent size. I don't use the far back seat so I wouldn't know about the legroom, the second row is very roomy. The trunk is larger than my

---

[14] https://www.kbb.com/toyota/highlander-hybrid/2021/ last visited March 16, 2022).

previous 2016 Highlander. The 4 cylinder engine makes more noise than the 6 cylinder, at first it was annoying but I got used to it. It has 3 different modes for driving, ECO, normal and sport. I was a little worried about the response and get up and go, but if you put it in sport mode it goes, at the expense of gas mileage I'm sure, normal mode is pretty good as well, not sure what happens with the gas mileage in that mode so I tend to keep it in ECO. The safety features are great, blind spot monitoring, lane assist and intelligent cruise control to begin with are nice to have. The Cons: The navigation package is awful, I keep using my phone and on the last trip google maps beat it by 15 minutes. Plus if a phone call comes in its hard to get the directions while on a call. I tried the Android Auto and it really limits what you can do while you are driving so much to me it is not worth it. I might need to learn how to use it better but that is my first impression. My biggest pet peeve and complaint is the range and gas tank size, they specify a 17.1 gallon gas tank which if the mileage is correct would give you a range of around 600 miles. I was only getting 12.5 - 13 gallons in the tank when it said 0 miles to empty and a range of around 450 miles. Thinking something was wrong I brought it to the dealer who checked it out and called Toyota, Toyota said (according to my dealer) yes, we say 17.1 gallons but you'll only get 14 gallons into it. I haven't been able to get 14 gallons into it. They said it's 17.1 gallons but the configuration of the car only allows you to put 14 gallons at most into. Now I'm not happy. The range is one of the reasons I bought this car, otherwise I might have bought a 3 row KIA or Hyundai. What's next? Lemon law, join a class action like the RAV4 Hybrid, or live with it.

64.    The existence of the Fuel Tank Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiffs and other Class Members known of the Fuel Tank

Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

65.    Reasonable consumers, like Plaintiffs, reasonably expect that a vehicle's fuel systems are safe, will function in a manner that will not pose a safety risk, and are free of defects, all of which were not true with respect to the fuel systems in the Class Vehicles. They also expected that the Class Vehicles would be fit for the ordinary purpose of being capable of being fully fueled and would confirm to the promises and affirmations on their window stickers which they could not due to the Fuel Tank Defect. Plaintiffs and Class Members further reasonably expected that Toyota would not sell or lease vehicles with known safety defects which can increase emissions and present a overflow risk during fueling, such as the Fuel Tank Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect Toyota to fail to disclose the Fuel Tank Defect to them and to continually deny it.

**Toyota Has Actively Concealed the Fuel Tank Defect**

66.    Despite knowing of the existence of the Fuel Tank Defect, Toyota has and continues to market the Class Vehicles as having a 17.1 capacity fuel tank, displaying the vehicles with window stickers which show a range of 616 miles per tank, and advertises about the range and other fuel-efficient advantages of the Class Vehicles.

36

67.     In the brochure for the Class Vehicles, as well as other sources detailed above, Toyota lists the fuel capacity of the gas tank to be 17.1 gallons.

68.     TMS, in conjunction with TMC, has also instructed its authorized dealerships to inform customers who complain about the fuel capacity that fuel tanks have a "margin of error" of a few gallons, so that it is reasonable that they cannot fill their fuel tanks to the listed capacity. TMS specifically reinforces this instruction when dealership technicians contact TMS' Technical Assistance department and open a "TAS" case regarding the Defect.

69.     When customers call or email Toyota Customer Care to complain that their fuel tanks cannot be filled more than 14.5 gallons and that their DTE, at most, reaches 400 or 500 miles, despite Toyota's representations and advertising its 17.1 gallon capacity and DTE of over 600 miles, TMS initially obfuscates the issue. For example, TMS tells customers:

> Fuel efficiency is influenced by many variables including, but not limited to, quality and octane level of
>
> gasoline, fuel additives or seasonal variations in fuel, load carried in vehicle, tire pressure, terrain, location (urban/suburban), driving style, and even weather conditions. Keep in mind when refueling your vehicle, that different gas station maybe calibrated differently resulting in varied miles to empty.
>
> Additionally, one way you may wish to try to estimate your driving range would be to determine your real-life miles-per-gallon, and multiply that by the number of gallons it takes to fill your tank. For example, if you

> normally get 25 miles per gallon and it takes ten gallons to fill your tank, you can estimate an approximate driving range of 250 miles.

70. When pressed, TMS eventually admits the Fuel Tank Defect to customers, stating:

> We apologize for the confusion pertaining to your 2021 Toyota Highlander Hybrid. The Highlander has a fuel tank with a 17.1 gallon capacity, and approximately 14.2 gallons of it useable. The fuel pick-up line is not at the bottom of the fuel tank, so that residual fuel does not get into the engine. The residual fuel can possibly be contaminated with debris, water, etc.

> Additionally, if you feel that your vehicle is not providing a [sic] accurate account of the fuel that is being used. We would recommend have your local Toyota dealer inspect your vehicle for any concerns.

71. Yet Toyota has refused to date to provide any notice to consumers, owners and lessees—including Class Members—about the Defect or when they can expect a repair for the Defect.

72. Each of these misrepresentations that TMS instructs personnel at authorized dealerships as well as its own customer services representatives to repeat to Plaintiffs and members of the Class are made with TMC's agreement and authorization.

73. Toyota also continues to deceptively list the fuel capacity of Class Vehicles as 17.1 gallons, without mentioning that consumers may not be able to fill their fuel tanks to capacity.

74.     Despite its knowledge of the Fuel Tank Defect in the Class Vehicles, Toyota actively concealed the existence and nature of the defect from Plaintiffs and Class Members and failed to issue a Technical Tip or TSB to its dealerships informing them that they should acknowledge the problem and reveal it to prospective buyers. Toyota has also failed to issue any documents to the Department of Energy to correct its misrepresentations about the capacity of the fuel tank, so that the accurate range of the vehicle on a single tank can be displayed on fueleconomy.gov.

75.     Nor has Toyota revised its advertising, owners' manuals, warranty books, Monroney Stickers, or informed potential purchasers and lessees that the fuel tank cannot be filled to capacity in Class Vehicles and comes with a corresponding safety risk.

76.     Specifically, Toyota failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a)     any and all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the fuel systems;

(b)     that the Class Vehicles, including the fuel systems, were unsafe, not in good in working order, were defective, were in need of

repair and possibly recalibration or other software mechanisms, and were not fit for their intended or particular purposes; and

(c)     that the Class Vehicles and the fuel systems were defective, despite the fact that Toyota learned of such defects as early as 2018 during pre-production testing.

## The Agency Relationship Between Toyota Motor Sales, U.S.A., Inc., and its Network of Authorized Dealerships

77.     To sell vehicles to the general public, TMS enters into agreements with its nationwide network of authorized dealerships to engage in retail sales with consumers such as Plaintiffs. In return for the exclusive right to sell new, TMS-branded vehicles, the authorized dealerships are also permitted under these agreements with TMS to service and repair these vehicles under the warranties TMS provides directly to consumers who purchased new vehicles from the authorized dealerships. Accordingly, TMS's authorized dealerships are TMS's agents, and the consumers who purchase or lease TMS vehicles are the third-party beneficiaries of these dealership agreements, which allow the consumers to purchase and service their TMS vehicles locally.

78.     Further, Plaintiffs and each of the members of the Class are the intended beneficiaries of TMS's express and implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles, and they have no rights

under the warranty agreements provided by TMS. TMS's warranties were designed for and intended to benefit the consumers only. The consumers are the true intended beneficiaries of TMS's express and implied warranties, and the consumers may therefore avail themselves of those warranties.

79. TMS issued the express warranty to the Plaintiffs and the Class members. TMS also developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles. TMS also is responsible for the content of the Monroney Stickers on TMS-branded vehicles. Because TMS issues the express warranty directly to the consumers, the consumers are in direct privity with TMS with respect to the warranties

80. In promoting, selling, and repairing its defective vehicles, TMS acts through numerous authorized dealers who act, and represent themselves to the public, as exclusive TMS representatives and agents. That the dealers act as TMS's agents is demonstrated by the following facts:

> (a) The authorized Toyota dealerships complete all service and repair according to TMS's instructions, which TMS issues to its authorized dealerships through service manuals, technical service bulletins ("TSBs"), technical tips ("TT"), and other documents;

(b)   Consumers are able to receive services under TMS's issued New Vehicle Limited Warranty only at TMS's authorized dealerships, and they are able to receive these services because of the agreements between TMS and the authorized dealers. These agreements provide TMS with a significant amount of control over the actions of the authorized dealerships;

(c)   The warranties provided by TMS for the defective vehicles direct consumers to take their vehicles to authorized dealerships for repairs or services.

(d)   TMS dictates the nature and terms of the purchase contracts entered into between its authorized dealers and consumers;

(e)   TMS controls the way in which its authorized dealers can respond to complaints and inquiries concerning defective vehicles, and the dealerships are able to perform repairs under warranty only with TMS's authorization.

(f)   TMS has entered into agreements and understandings with its authorized dealers pursuant to which it authorizes and exercises substantial control over the operations of its dealers and the dealers' interaction with the public; and

(g)   TMS implemented its express and implied warranties as they relate to the defects alleged herein by instructing authorized TMS dealerships to address complaints of the Defect by prescribing and implementing the relevant TSBs cited herein.

81.   Indeed, Toyota's warranty booklets make it abundantly clear that Toyota's authorized dealerships are Toyota's agents for vehicle sales and service. The booklets, which are plainly written for the consumers, not the dealerships, tell the consumers repeatedly to seek repairs and assistance at its "authorized dealerships." For example, at the outset, Toyota notifies Plaintiffs and class members in the warranty booklet that coverage applies only to vehicles "**originally sold by an authorized dealer**" and that **"It]he decision whether a part would be repaired or replaced will be made by the servicing Toyota dealership and/or Toyota."** Further, the booklets state "Both Toyota and your Toyota dealer are dedicated to serving your automotive needs." The booklets direct Plaintiffs and class members, should they have a problem or concern, to first "discuss the situation with a dealership manager, such as the service manager or customer relations manager. In most cases, a satisfactory solution can be reached at this step." Toyota than directs Plaintiffs and class members: "If the dealership does not address your concern to your satisfaction, to "call the Toyota Customer Experience Center" and notify Toyota of the VIN number, the mileage, and "the name of your Toyota dealership."

Then, "A Toyota customer relations representative will assist you in working with the dealership to find a satisfactory solution."

82.    Additionally, the transportation assistance component of the New Vehicle Limited Warranty, which provides transportation assistance if the vehicle must be kept overnight for warranty-covered repairs, applies only to vehicles "sold and serviced by authorized Toyota dealerships..."

83.    Accordingly, as the above paragraphs demonstrate, the authorized dealerships are agents of TMS. Plaintiffs and each of the members of the Class have had sufficient direct dealings with either TMS or its agent dealerships to establish privity of contract between TMS, on one hand, and Plaintiffs and each of the members of the Class, on the other hand. This establishes privity with respect to the express and implied warranty between Plaintiffs and TMS.

## CLASS ACTION ALLEGATIONS

84.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

85.    The Class is defined as:

> **Class**: All individuals in the State of New Jersey who purchased or leased a 2020 to 2021 Toyota Highlander Hybrid vehicle.

86. Excluded from the Class are: (1) Defendants, any entity or division in which Defendants has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserves the right to amend the Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

87. <u>Numerosity</u>: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, that discovery will show that, tens of thousands of Class Vehicles have sold in the United States, and thousands within New Jersey. The number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

88.   <u>Typicality:</u> Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Toyota. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that they have incurred or will incur the cost of repairing or replacing the defective fuel systems that cause the Fuel Tank Defect. Furthermore, the factual bases of Toyota's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

89.   <u>Commonality:</u> There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting Class Members individually. These common legal and factual issues include the following:

(a)   Whether Class Vehicles suffer from the Fuel Tank Defect;

(b)   Whether Defendants have knowledge of the Fuel Tank Defect and, if so, how long Defendants has known of the defect;

(c)   Whether the defective nature of fuel tank constitutes a material fact;

(d)   Whether Defendants has a duty to disclose the Fuel Tank Defect to Plaintiffs and Class Members;

(e)     Whether Defendants knew or reasonably should have known of the Fuel Tank Defect before they sold and leased Class Vehicles to Class Members;

(f)     Whether Defendants should be declared financially responsible for notifying the Class Members of problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective fuel system;

(g)     Whether Defendants are obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective fuel systems; and

(h)     Whether damages, restitution, equitable, injunctive, compulsory or other relief are warranted.

90.     Adequate Representation: Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and they intend to prosecute this action vigorously.

91.     Predominance and Superiority: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most

47

Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**
**VIOLATION OF MAGNUSON-MOSS WARRANTY ACT,**
**15 U.S.C. § 2301, *et seq*. ("MMWA")**

92.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

93.    The MMWA provides a private right of action by purchasers of consumer products against retailers who, *inter alia*, fail to comply with the terms of an implied or written warranty. 15 U.S.C. § 2310(d)(1).  As alleged herein, Toyota has failed to comply with its implied warranty of merchantability and/or express warranty with regard to the Class Vehicles.

94.    The Class Vehicles are consumer products, as that term is defined in 15 U.S.C. § 2301(1).

95.     Plaintiffs and each member of Class are consumers, as that term is defined in 15 U.S.C. § 2301(3).

96.     Toyota is a supplier and warrantor, as those terms are defined in 15 U.S.C. § 2301(4)-(5).

97.     The MMWA provides a cause of action for breach of warranty or other violations of the Act. 15 U.S.C. § 2310(d)(1).  Toyota breached the implied warranty of merchantability for the Class Vehicles, as alleged herein, which it cannot disclaim under the MMWA, 15 U.S.C. § 2308(a)(1), by failing to provide merchantable goods.  Plaintiffs have suffered damages as a result of Toyota's breach of the implied warranty of merchantability as set forth herein. 15 U.S.C. § 2310(d)(1)-(2).

98.     Toyota's acts and omissions in violation of the MMWA are "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," and they are unlawful. 15 U.S.C. § 2310(b); 15 U.S.C. § 45(a)(1).

99.     Plaintiffs and the members of the Class have suffered, and are entitled to recover, damages as a result of Toyota's breach of express and/or implied warranties and violations of the MMWA.

100.   Plaintiffs also seek an award of costs and expenses, including attorneys' fees, under the MMWA to prevailing consumers in connection with the commencement and prosecution of this action. 15 U.S.C. § 2310(d)(2).  Plaintiffs

and the prospective Class intend to seek such an award, including expert witness costs and other recoverable costs, as prevailing consumers at the conclusion of this lawsuit.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

101.   Plaintiffs hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

102.   Toyota manufactured and distributed Class Vehicles throughout the United States for sale to Plaintiffs and the Class Members.

103.   Toyota impliedly warranted to Plaintiffs and members of the Class that their Class Vehicles were free of defects, and were merchantable and fit for their ordinary purpose for which such goods are used.

104.   As alleged herein, Toyota breached the implied warranty of merchantability because the Jeep vehicles suffer from defects that cause the Fuel Defect.  The Class Vehicles are therefore defective, unmerchantable, and unfit for their ordinary, intended purpose.

105.   After Plaintiffs experienced the Fuel Defect on numerous occasions and have been unable to obtain relief from Toyota or its agents.

106.   Due to the Fuel Defect, Plaintiffs and the members of the Class are unable to operate their vehicles as intended in a safe condition, substantially free from defects.  The Class Vehicles do not provide safe and reliable transportation to

Plaintiffs and Class Members under conditions acknowledged by Defendant.  As a result, Plaintiffs and members of the Class are unable to safely drive their Class Vehicles without manifestation, or imminent threat of manifestation, of the Fuel Defect.

107.   Plaintiffs did not receive or otherwise have the opportunity to review, at or before the time of sale, the written warranty containing the purported exclusions and limitations of remedies.  Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable, and Plaintiffs are entitled to all remedies available under Article 2 of the Uniform Commercial Code and other state laws of the Class.  Any purported warranty disclaimers, exclusions, and limitations were unconscionable and unenforceable.  As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiffs and members of the Class have been injured in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**

108.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

109.   Defendant provided all purchasers and lessees of the Class Vehicles with the same express warranties described herein, which became part of the basis of the bargain.

110.   The parts affected by the Fuel Defect were distributed by Defendant in the Class Vehicles and are covered by the warranties Defendant provided to all purchasers and lessors of Class Vehicles.

111.   Defendant breached these warranties by selling and leasing Class Vehicles with the Fuel Defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

112.   Plaintiffs notified Defendant of the breach within the warranty period, but Defendant already knew of defects causing the Fuel Defect and yet chose to conceal it and to failed to comply with its warranty obligations.

113.   As a direct and proximate cause of Defendant's breach, Plaintiffs and the members of the Class bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Plaintiffs and New Jersey Class Members have also incurred and will continue to incur costs related to the diagnosis and repair of the Fuel Defect.

114.   Defendant's attempt to disclaim or limit these express warranties are unconscionable and unenforceable under the circumstances here.

115.   Specifically, Defendant's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

116.   The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Class given Toyota has not repaired, replaced or refunded the Fuel Defect value of the Class Vehicles.

117.   Plaintiffs and the Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

### FOURTH CAUSE OF ACTION
### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. § 56:8-2, *et seq.* ("CFA")

118.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

119.   Plaintiffs and other members of the Class are "consumers" within the meaning of the New Jersey Consumer Fraud Act.

120.   The Class Vehicles are "merchandise" within the meaning of the CFA, as they are goods that are offered directly or indirectly to the public for sale.

121.   At all relevant times, Defendant conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

122.   The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under other remedies.

123.   Defendant has engaged in deceptive, unconscionable, unlawful, unfair, fraudulent and misleading commercial practices, including misleading omissions of material fact, in connection with the marketing, promotion, and sale of Class Vehicles without disclosing the Fuel Defect.

124.   Defendant knew of the Fuel Defect in the Class Vehicles and did not disclose it to consumers like Plaintiffs and did not provide any warning to protect consumers like Plaintiffs or instructions on how to safely operate the vehicle with the Fuel Defect.

125.   Defendant had knowledge of the Class Vehicles' Fuel Defect at the time of sale.  The causes of the Fuel Defect in the Class Vehicles are latent and are not something that Plaintiffs or Class Members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

126.   Defendant intended that consumers like Plaintiffs and members of the Class rely on its deceptive, false and misleading misrepresentations or omissions of material fact in order to increase its sales and profits.

127.   Defendant intended that Plaintiffs and the other members of the Class to rely on its acts of concealment and omissions by purchasing the Class Vehicles at full price rather than paying less or purchasing competitors' vehicle.

128.   Had Defendant disclosed all material information regarding the Fuel Defect to Plaintiffs and other members of the Class, they would not have purchased the Class Vehicles, or they would have paid less for them.

129.   Plaintiffs have provided Defendant multiple opportunities to remedy the Fuel Defect alleged here in their Class Vehicles, and Defendant has not provided a remedy under the terms of any warranty available to Plaintiffs and the Class.

130.   Defendant's conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

131.   As a result of the foregoing acts, omissions, and practices, Plaintiffs and other members of the Class have suffered an ascertainable loss by purchasing defective Class Vehicles that are unable to perform their essential function for their expected useful life, travel the mileage as represented, and present a risk of safety to Plaintiffs and members of the Class. Plaintiffs are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees, and costs of suit.

## RELIEF REQUESTED

132.   Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

(a)      An order certifying the proposed Class designating Plaintiffs as named representative of the Class, and designating the undersigned as Class Counsel;

(b)      A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the of the fuel system, including the need for repairs;

(c)      An order correcting Defendant past misrepresentations of the Fuel Defect and enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; enjoining Defendants from selling the Class Vehicles with the misleading information; and/or compelling TMS to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(d)      An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(e)      Any and all remedies provided pursuant to the state and federal consumer protection statutes herein alleged, including any applicable statutory and civil penalties;

(f)      Any and all remedies provided pursuant to the state warranty statutes herein alleged, including any applicable statutory and civil penalties;

(g)     An award of attorneys' fees and costs, as allowed by law;

(h)     An award of pre-judgment and post-judgment interest, as provided by law;

(i)     Leave to amend the Complaint to conform to the evidence produced at trial; and

(j)     Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

133.   Plaintiffs demand a trial by jury of any and all issues in this action triable.

Dated:  March 25, 2022                    Respectfully submitted,

By:  */s/ Simon B. Paris*
　　Simon B. Paris (Atty ID #: 04982-1996)
　　Patrick Howard (Atty ID #: 02280-2001)
　　**SALTZ MONGELUZZI &**
　　**BENDESKY, PC**
　　1650 Market Street, 52nd Floor
　　One Liberty Place
　　Philadelphia, PA  19103
　　Tel: (215) 496-8282
　　sparis@smbb.com
　　phoward@smbb.com

　　Daniel E. Gustafson*
　　David M. Goodwin*
　　Ling S. Wang*
　　**GUSTAFSON GLUEK PLLC**
　　Canadian Pacific Plaza
　　120 South 6th Street, Suite 2600
　　Minneapolis, MN 55402
　　Tel: (612) 333-8844

57

dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
lwang@gustafsongluek.com

*Pro Hac* Admission to be Requested